Randall L. HUBBARD, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 55S00–9808–CR–428.

Supreme Court of Indiana.

Jan. 16, 2001.

Kevin P. McGoff, Alicia A. Gooden, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Randall L. Hubbard was convicted of murder and robbery after shooting two employees of a VFW post in the back of their heads and taking about $600 from the post. Defendant's challenge to the trial court's instructions on accomplice liability fails because there was sufficient evidence to support it. We also reject his request that we abandon our long-held rule against the admissibility of polygraphs tests.

We have jurisdiction over this appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict show that on the morning of November 27, 1996, an employee of a Martinsville VFW post arrived at work and found two of his co-workers dead. Both had been working the previous evening and both had been shot from behind with a nine millimeter handgun. Police subsequently determined that about $600 had been stolen from the post.

Defendant was arrested and tried for the murders and the robbery. A local bartender testified that Defendant was carrying a nine millimeter handgun on the night of the murders. One Dean Burpo testified that when Burpo left the post around midnight, Defendant was alone with the two victims. Burpo also testified that one of the victims was preparing to close the post and was counting out the night's earnings. After the murders, several witnesses saw Defendant in two Martinsville bars. He had recently changed clothes and taken a shower. Several witnesses testified that he was carrying a large sum of money although he had been penniless earlier in the evening.

At trial, Defendant argued that one Gary Thacker, a former co-worker of Defendant's, had committed the murders while Defendant was merely a bystander. Several witnesses testified that Defendant had told them that he was at the post during the killings but that he was there only in order to give Thacker a ride. These witnesses also testified that Defendant had told them that Thacker shot the victims. Defendant said that Thacker spared his life in order to implicate him, threatened him not to tell anyone about the killings, and gave him money.

Defendant was charged on December 1, 1996, with two counts of Murder,[1] two counts of Felony Murder,[2] and one count of Robbery.[3] On May 6, 1998, a jury convicted Defendant on all counts, with judgment being entered on the two murder counts and the robbery count. The trial court sentenced Defendant to two consecutive terms of 60 years for the murders and a term of 45 years for the robbery.

### Discussion

#### I

■ Defendant contends that the trial court committed reversible error by instructing the jury on accomplice liability.[4]

---

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.*

3. *Id.* § 35–42–5–1.

4. The instructions on accomplice liability were as follows:

[Final Instruction No. 4]

A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.

In order to be held responsible for the actions of another, he need only have

We review the grant of a jury instruction for abuse of discretion. *See Benefiel v. State,* 716 N.E.2d 906, 914 (Ind.1999) ("Jury instruction lies largely within the discretion of the trial court. On appeal, such issues are reviewed for abuse of discretion.") (citations omitted), *cert. denied,* — U.S. ——, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000); *Smith v. State,* 668 N.E.2d 661, 662 (Ind.1996) ("Instructing the jury is a matter assigned to the sound discretion of the trial court, and we review a trial court's decisions only for an abuse of discretion."). Moreover, an improper instruction will merit reversal only if it "so affects the entire charge that the jury was misled as to the law in the case." *White v. State,* 547 N.E.2d 831, 835 (Ind.1989).

■■■ In reviewing a challenge to a jury instruction, "this Court considers whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions...." *Sherwood v. State,* 702 N.E.2d 694, 698 (Ind.1998). Defendant argues under the second prong that the evidence was insufficient to support the trial court giving the accomplice liability instructions.[5] The State finds the requisite evidence in testimony that Defendant was at the VFW post when the murders were committed, had returned to the post to give Thacker a ride, and was spotted later that evening with an amount of cash similar to the amount taken from the post. Appellee's Br. at 12–14.

This evidence supports the trial court's instructions. Defendant's conduct—indeed, his theory of the case—created at least an inference that if he did not kill the victims himself, he aided Thacker in the murders. Defendant was acquainted with Thacker as the two had previously worked together. Witnesses saw Defendant have a brief conversation with Thacker early in the evening on the night of the murders. As previously noted, Defendant came to the VFW post around the time of the murders with the stated purpose of giving Thacker a ride. Finally, Thacker testified that Defendant had previously asked Thacker to join him in performing armed robberies. This evidence is sufficient to support the instructions on accomplice liability. *See, e.g., Echols v. State,* 722 N.E.2d 805, 807 (Ind.2000) ("A defendant's mere presence at the crime scene is insufficient to establish accomplice liability. By itself, a defendant's lack of opposition to the crime is also insufficient to establish accomplice liability. Nonetheless, both of these factors may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime."); *Wisehart v. State,* 693 N.E.2d 23, 51 n.32 (Ind.1998) (finding sufficient evidence to support instruction on accomplice liability where two police officers testified that " 'it was a possibility' that [defendant] did not act alone in committing the crime."); *McQueen v. State,* 711 N.E.2d 503, 506 (Ind.1999) ("With evidence supporting the inference

knowledge that he is helping in the commission of a crime. He does not have to personally participate in the crime nor does he have to be present when the crime is committed.

Proof of the defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.

[Final Instruction No. 5]

A person who knowingly or intentionally aids, induces, or causes another person to

commit an offense commits that offense, even if the other person:

(1) Has not been prosecuted for the offense;

(2) Has not been convicted of the offense;

(3) Has been acquitted of the offense.

(R. at 792–93.)

5. Under the Indiana Code, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...." Ind.Code § 35–41–2–4 (1993). Defendant does not argue that the instructions incorrectly stated the law or were cumulative.

that either of the McQueens could have been the actual killer with the other aiding in the crime, we find the trial court justified in giving an instruction on accessory liability.").[6]

## II

Defendant argues that the trial court committed reversible error when it excluded the results of a polygraph examination administered to Thacker. Defendant offered this evidence in his effort to show that Thacker committed the murders. Defendant's offer of proof shows that the polygraph examiner would· have testified that he believed Thacker was not "completely truthful.... [I]t is unknown to this examiner if Mr. Thacker was involved in shooting either [victim] or if he is withholding information about this case." (R. at 4501, 4524.) Defendant argues that the exclusion of this testimony violated his federal constitutional right to a put on a defense and contravened Indiana Rule of Evidence 702. We disagree with both arguments.

## A

First, Defendant asks us to revisit our holding in *Perry v. State* that exclusion of polygraph results absent a stipulation does not violate a defendant's constitutional right to put on a defense. 541 N.E.2d 913, 915 (Ind.1989). A reexamination of this approach to polygraph evidence encounters no constitutional impediment. A criminal defendant does not enjoy an unlimited constitutional right to offer exculpatory evidence. *See Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998) ("[W]hile the right to present witnesses is of the utmost importance, it is not absolute."); *Kellems v. State*, 651 N.E.2d 326, 328 (Ind.Ct.App.1995) ("The right to present witnesses is of critical importance, but it is not absolute. In appropriate cases, *the right must yield to other legitimate interests in the criminal trial process.*") (emphasis added) (citing *Chambers v. Mississippi*, 410 U.S. 284, 296, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). Instead, the Constitution requires us to balance the competing interests at stake:

> ˙[W]hen the defendant's Sixth Amendment right to present a defense collides with the State's interest in promulgating rules of evidence to govern the conduct of its trials, the merits of the respective positions must be weighed, [and] the State's interest must give way to the defendant's rights if its rules are "mechanistically" applied to deprive the defendant of a fair trial.

*Huffman v. State*, 543 N.E.2d 360, 375 (Ind.1989) (citing *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038), *overruled in part on other grounds, Street v. State*, 567 N.E.2d 102 (Ind.1991).

The United States Supreme Court has recently employed this analysis to uphold a similar per se exclusion of polygraph results in military courts. *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The defendant in that case argued that Military Rule of Evidence 707—which explicitly excludes the results

---

**6.** Defendant argues that because the State's primary theory at trial was that Defendant acted alone, it could not alternatively seek an instruction on accomplice liability. However, the trial court could instruct the jury on accomplice liability as long as the evidence supported the instruction. *See McQueen*, 711 N.E.2d at 506 ("Thus, one may be charged as a principal yet convicted as an accomplice.... [T]he instruction on accessory liability does not represent an additional charge or a new theory of the case."); *Hoskins v. State*, 441 N.E.2d 419, 424–25 (Ind.1982) ("The evidence which tended to show that the appellant himself did not actually commit the murders was introduced by Appellant in an effort to show that he was present and took part in the robbery but did not take part in any killings. The instructions on confederate liability were properly given by the trial court.... One can be charged as a principal and convicted on proof that he aided or abetted another in committing the crime."). Moreover, this tactic by the State did not shift the burden of proof at trial to Defendant, as he asserts, but merely presented an alternative theory to the jury.

of a polygraph test[7]—unconstitutionally prevented him from mounting a defense. The Court disagreed, phrasing its analysis in terms of balancing interests:

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus " 'bow to accommodate other legitimate interests in the criminal trial process.' " As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Id.* at 308, 118 S.Ct. 1261 (citations omitted). The Court then identified the government interests in excluding polygraph results as "ensuring that only reliable evidence is introduced at trial, preserving the court members' role in determining credibility, and avoiding litigation that is collateral to the primary purpose of the trial." *Id.* at 309, 118 S.Ct. 1261.[8] The Court concluded that these interests outweighed the defendant's limited interest in presenting what it deemed to be inherently unreliable evidence:

> Although the degree of reliability of polygraph evidence may depend upon a variety of identifiable factors, there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams. Individual jurisdictions therefore may reasonably reach differing conclusions as to whether polygraph evidence should be admitted. We cannot say, then, that presented with such widespread uncertainty, the [government] acted arbitrarily or disproportionately in promulgating a *per se* rule excluding all polygraph evidence.

*Id.* at 312, 118 S.Ct. 1261. Moreover, the Court made clear that the defendant's interest in the polygraph evidence was also undercut by the fact that the defendant was able to present "all the relevant details of the charged offense from the perspective of the accused, and the Rule did not preclude him from introducing any factual evidence." *Id.* at 317, 118 S.Ct. 1261.

We hold that even if *Scheffer* is not *controlling* precedent here,[9] its analysis of the reliability of polygraph test results demonstrates that Indiana's per se exclusion is neither "arbitrary" nor "disproportionate" to the State's interest in a fair trial. *See id.* at 309, 118 S.Ct. 1261. Defendant argues that the reliability of polygraph tests has improved sufficiently since *Perry* to warrant their admission into evidence. He cites numerous academic articles as well as federal cases that have admitted polygraph results.[10] He also

7. The comments to Military Rule of Evidence 707 make clear that the Rule requires the exclusion of *all* polygraph evidence, even if the parties stipulate otherwise. *Manual for Courts–Martial, United States* A22–49 (1998 ed.). *See also United States v. Clark*, 53 M.J. 280 (2000) (holding that Military Rule of Evidence 707 required exclusion of polygraph evidence even if the parties stipulate to its admission). As such, the military rule upheld by *Scheffer* is even more restrictive than the rule we follow here.

8. Justice Thomas's opinion carried a majority as to the government's interest in ensuring

the reliability of evidence, but only a plurality on the other two purported interests.

9. Defendant attempts to distinguish *Scheffer* on the grounds that the test results in that case were only offered to "bolster [the defendant's] credibility," while the evidence here is offered "to support his defense." Appellant's Br. at 36. This distinction is unpersuasive, as polygraph test results are unreliable regardless of whether they are offered as substantive evidence or for impeachment.

10. Defendant cites these cases only to show that federal courts have *admitted* polygraph

notes that law enforcement officials often rely on polygraph tests in their investigations. The authority Defendant cites, however, only goes to show the depth of disagreement as to the reliability of polygraph tests. As *Scheffer* pointed out:

> [T]here is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques. Some studies have concluded that polygraph tests overall are accurate and reliable. Others have found that polygraph tests assess truthfulness significantly less—accurately that scientific field studies suggest the accuracy rate of the 'control question technique' polygraph is 'little better than could be obtained by the toss of a coin'....

*Id.* at 309–10, 118 S.Ct. 1261 (citations omitted). This well-documented disagreement among the experts undermines the reliability of polygraph test results and validates the State's interest in excluding such results without a stipulation. Defendant's limited interest in putting on unreliable evidence does not outweigh the State's interest in ensuring that its trials are fair.

### B

Defendant next argues that even if the State could constitutionally exclude polygraph evidence, to do so in this case violates the Indiana Rules of Evidence. We review a trial court's evidentiary rulings for an abuse of discretion. *See McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997). Specifically, a polygraph examiner is an expert witness and as such "the relevant rules require that the expert be qualified to testify, the trial court be satisfied that the scientific principles upon which the expert testimony rests are reliable, and the testimony's probative value is not substantially outweighed by the dangers of unfair prejudice." *Smith v. State*, 702

N.E.2d 668, 672 (Ind.1998) (citing Ind. Evidence Rules 403 and 702; *Harrison v. State*, 644 N.E.2d 1243, 1252 (Ind.1995)). The trial court found that while sufficiently reliable, the potential prejudice from the test outweighed its value. We do not reach this final inquiry because—as indicated above—we reaffirm this Court's longstanding view that polygraph test results are not sufficiently reliable to warrant admission absent a stipulation.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

---

results under the Federal Rules of Evidence. He cites no case that *requires* the admission of polygraph results as a constitutional proposition.