## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 02 2015, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adam McNally, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 2, 2015 <br><br> Court of Appeals Case No. <br> 34A02-1407-CR-502 <br><br> Appeal from the Howard Superior Court 2 <br><br> The Honorable Brant J. Parry, Judge <br><br> Trial Court Cause No. <br> 34D02-1212-FA-00313 |

**Altice, Judge.**

## Case Summary

[1] Adam McNally appeals his conviction and sentence for class A felony Child Molesting,[1] class D felony Dissemination of Matter Harmful to Minors,[2] and class B felony Promotion of Human Trafficking.[3] He contends that the State failed to present sufficient evidence to support the conviction for dissemination of matter harmful to minors. McNally also claims that the trial court erred in excluding certain defense witnesses. Finally, he argues that his aggregate sentence is inappropriate.

[2] We affirm.

## Facts & Procedural History

[3] McNally is M.C.'s step-father and has lived with M.C. and her mother since 2006. M.C. was born in April 2000. McNally began sexually abusing M.C. in November 2011, when she was eleven years old. Over the next year, McNally had vaginal, anal, and oral sex with M.C. numerous times and in various locations around Kokomo. He also used sex toys with the child, including a

---

[1] *See* Ind. Code § 35-42-4-3(a)(1). Effective July 1, 2014, this offense was reclassified as a Level 1 felony. Because McNally committed the offense prior to that date, it retains its prior classification as a class A felony.

[2] *See* Ind. Code § 35-49-3-3(a)(1). Effective July 1, 2014, this offense was reclassified as a Level 6 felony. Because McNally committed the offense prior to that date, it retains its prior classification as a class D felony.

[3] *See* I.C. § 35-42-3.5-1(b)(2). Effective July 1, 2014, this offense was reclassified as a Level 3 felony. Because McNally committed the offense prior to that date, it retains its prior classification as a class B felony.

metal ring that he placed in her mouth with straps that he tied around the back of her head. This device was used on M.C. the first time that he had her perform oral sex on him. McNally eventually began sharing M.C. sexually with other men, at least one of which he met via a Craigslist ad that he (McNally) had posted.

[4] On one occasion, McNally drove M.C. to a parking lot where he met a man named Andy. McNally and Andy spoke briefly outside, and then Andy entered and sat in the back of McNally's van. McNally instructed M.C. to get in the back with Andy and "made [M.C.] do oral sex for like, what seemed like hours" while McNally drove around. *Transcript* at 369.

[5] A few weeks later, McNally took M.C. to a hotel room. Shortly after they both undressed and laid on the bed, Andy entered the room and undressed. M.C. was instructed to perform oral sex on Andy while he licked her vagina and stuck his finger in her anus. Andy then had intercourse with M.C., followed by McNally having intercourse with her.

[6] Thereafter, in the summer of 2012, when M.C. was twelve years old, McNally took her to Tony Moore's apartment. McNally met Moore through a Craigslist ad. At some point during the visit, Moore indicated that he had porn movies, and McNally directed M.C. to pick one out, which she did. The three watched the movie in Moore's bedroom while they all undressed and engaged in sex acts. Moore had sexual intercourse with M.C. while McNally watched, and then McNally had intercourse with M.C. in Moore's presence. McNally took

M.C. to Moore's apartment on at least two more occasions for sexual activity over the next month.

[7] In November 2012, McNally informed M.C. that he, Andy, and Moore (whom M.C. knew only as "Tony") were all going to have sex with her. They were going to "three time her". *Appellant's Appendix* at 259. The idea of this scared M.C.

[8] On November 11, 2012, M.C. rode her bike to a nearby fire station and reported her step-father's abuse. Police and child protective services were immediately notified. McNally was removed from the home but not arrested until December. During this time, he went into the home while M.C. was at school and removed some belongings. The sex toys described by M.C. disappeared from the home during this time.

[9] Investigators eventually located the man M.C. knew as Tony. He initially denied knowing McNally or M.C. but then came in voluntarily for an interview on December 6, 2012. During the recorded interview, Moore confessed abusing M.C. on three occasions with McNally. His description of the events substantially aligned with M.C.'s accounts, including that McNally had the child pick out a porn movie to watch during the abuse.

[10] On December 7, 2012, the State charged McNally with child molesting and dissemination of matter harmful to minors. The State later added a charge of promotion of human trafficking. Moore, who was also charged, entered into a plea agreement and agreed to testify against McNally. While in jail together,

McNally attempted to persuade Moore to change his story. Moore rejected this request.

[11] McNally's three-day jury trial commenced on May 27, 2013. The jury found him guilty as charged. On July 8, 2014, the trial court sentenced him to forty-five years with five of those years suspended for class A felony child molesting, two years for class D felony dissemination of matter harmful to minors, and eighteen years with five suspended for class B felony promotion of human trafficking. The trial court ordered the sentences to be served consecutively, for an aggregate sentence of sixty-five years with ten of those years suspended to supervised probation. McNally appeals his convictions, as well as his aggregate sentence. Additional facts will be provided below as needed.

## Sufficiency of the Evidence

[12] McNally initially challenges the sufficiency of the evidence supporting his conviction for dissemination of matter harmful to minors. His argument proceeds under the false premise that an element of the offense was that the matter disseminated constituted "pornographic materials." *Appellant's Brief* at 5.

[13] Our standard of review is well settled. On appeal, we will not reweigh the evidence or assess the credibility of the witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id*. We will affirm the conviction if there is probative evidence from which a reasonable fact finder could find the defendant guilty beyond a reasonable doubt. *Id*.

[14] In order to sustain a conviction for dissemination of matter harmful to minors as charged, the State was required to prove that McNally 1) knowingly or intentionally 2) disseminated matter 3) that was harmful to M.C., a minor. "Matter" includes, among other things, a motion picture, digitized image, or other pictorial representation. I.C. § 35-49-1-3(2). Further, I.C. § 35-49-2-2 provides:

> A matter or performance is harmful to minors for purposes of this article if:
>
> (1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sadomasochistic abuse;
>
> (2) considered as a whole, it appeals to the prurient interest in sex of minors;
>
> (3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and
>
> (4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

[15] In the instant case, M.C. testified that while they were at Moore's apartment Moore indicated that "he had porn." *Transcript* at 381. According to M.C., McNally then instructed her to pick out one of the movies, which she did. Moore similarly testified that McNally had the child pick out a "porn" movie. *Id*. at 462. They watched the movie in the bedroom while all three of them undressed and engaged in sex acts.

[16] McNally essentially argues that the jury could not determine whether the movie constituted matter harmful to minors because the witnesses referred to it only as

"porn" without describing its content. We cannot agree. Under the circumstances of this case, a fact finder could reasonably infer from Moore's testimony, along with M.C.'s, that the movie selected from Moore's personal collection of porn movies constituted matter harmful to minors. Accordingly, we find McNally's challenge to the sufficiency of the evidence unavailing.

## Exclusion of Defense Witnesses

[17] A few days before trial, McNally informed the State of a potential rebuttal witness, John Norris. The State filed a motion in limine, and the trial court held a hearing on the motion at the conclusion of the State's case-in-chief. By the time of the hearing, McNally had also added Germaine Young and Gary Peterson as witnesses.

[18] Norris appeared at the hearing by video from the Howard County jail. Norris testified, outside the presence of the jury, that he and Moore were in jail together in May or June 2013. Although they were on separate floors, Norris explained that he had opportunities to hear and observe Moore (whom he did not know by name) talk from a distance of about thirty feet. Based upon this, Norris indicated that he could recognize Moore's voice. Norris then testified that he overheard Moore talking with another person through an air conditioning vent. McNally sought to call Norris as a rebuttal witness at trial to testify regarding a statement he allegedly overheard Moore make during this

conversation.[4] Norris came forward as a last-minute defense witness the week before McNally's trial. Leading up to trial, Norris had been incarcerated with McNally and spent time socially with him in jail. It was during this period of incarceration that Norris learned that Moore was going to be a witness against McNally.

[19] Young similarly appeared by video for the hearing. He indicated that although he was in jail and bunking with Norris about a year ago, he had no recollection of overhearing a conversation through the ventilation system. Young testified that he did not know Moore.

[20] After Young's brief testimony, McNally indicated that there was no need to call Peterson. Accordingly, the parties argued the motion in limine with regard to Norris only. The trial court ultimately granted the State's motion, concluding that McNally failed to establish sufficient reliability for Norris's testimony. McNally appeals, claiming that he was denied the opportunity to present his defense.

[21] Whether rooted in the Due Process Clause of the Fourteenth Amendment or the Compulsory Process or Confrontation clauses of the Sixth Amendment, the United States Constitution guarantees criminal defendants a meaningful

---

[4] According to the State's motion in limine, Norris alleged that he heard Moore say something to the effect: "I've done it before, but I didn't do it this time. But I'm going to take a plea because it could be a lot worse." *Appellant's Appendix* at 66.

opportunity to present a complete defense. *Hyser v. State*, 996 N.E.2d 443, 447 (Ind. Ct. App. 2013), *trans. denied*. The Indiana Supreme Court has stated:

> The right to offer the testimony of witnesses…is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Kubsch v. State,* 784 N.E.2d 905, 924 (Ind. 2003). "When competent, reliable evidence is excluded that is central to the defendant's case, this right is abridged." *Hyser*, 996 N.E.2d at 448. A criminal defendant, however, does not enjoy an unlimited constitutional right to offer exculpatory evidence, as the right is subject to reasonable restrictions. *Hubbard v. State*, 742 N.E.2d 919, 922-23 (Ind. 2001), *cert. denied*, 534 U.S. 869 (2001). Moreover, regardless of the theory of defense, "evidence to support the theory must comply with applicable evidentiary rules." *Kubsch*, 784 N.E.2d 926.

[22] We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Allen v. State*, 813 N.E.2d 349, 361 (Ind. Ct. App. 2004), *trans. denied*. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances, or if the court has misinterpreted the law. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). Further, errors in the exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant. *Allen*, 813 N.E.2d at

361. "In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact." *Hyser*, 996 N.E.2d at 448.

[23] The trial court did not err in excluding Norris, Young, or Peterson from testifying at trial. In fact, McNally makes no argument on appeal regarding the exclusion of Young and Peterson, and his argument regarding Norris is tenuous and lacking in cogency. The State argues that Norris's proposed testimony constituted unreliable hearsay, and McNally makes no argument to the contrary. Beyond asserting a general right to present a defense, McNally does not attempt to establish that the proffered testimony was admissible, let alone that it was competent, reliable evidence central to his case. Further, even if we were to find that the trial court erred in excluding Norris's testimony, the error would be harmless in light of the overwhelming evidence of McNally's guilt.

## Appropriateness of Sentence

[24] Finally, McNally contends that his aggregate sentence is inappropriate in light of his character and the nature of his offenses. In this regard, he asserts that he has essentially no criminal history and that courts in Indiana have "probably been faced with more 'horrible' and 'heinous' circumstances or facts". *Appellant's Brief* at 11.

[25] Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind.

Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentence review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). McNally bears the burden of persuading us that his sentence is inappropriate. *See id.*

[26] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[27] The maximum aggregate sentence McNally faced in this case was seventy-three years executed.[5] As set forth above, the trial court imposed a total of sixty-five years, with ten of those years suspended to supervised probation. Although he received aggravated, consecutive sentences, his executed sentence was substantially less than the maximum. *See Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010) (upon review of the appropriateness of a sentence, it is proper to consider whether a portion of the sentence was suspended).

[28] The nature and circumstances of McNally's offenses are particularly heinous. McNally was in a position of trust, preying on his step-daughter for over a year by repeatedly engaging in vaginal, anal, and oral sex with the eleven/twelve-year-old girl at various locations including motels, their own home, and the homes of relatives and others. *See Newsome v. State*, 797 N.E.2d 293, 300 (Ind. Ct. App. 2003) ("Repeated molestations occurring over a period of time can be an aggravating factor supporting the maximum enhancement"), *trans. denied*. He also used sex toys with the child and, on at least one occasion, provided M.C. with one of her mother's dresses to wear while he had sex with her at a motel. Additionally, he kept her quiet by threatening to accuse her of molesting her younger sister if she told anyone of his actions.

---

[5] The maximum sentence for a class A felony is fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a). Twenty years is the maximum for a class B felony. I.C. § 35-50-2-5(a). The maximum for a class D felony is three years. I.C. § 35-50-2-7(a).

[29] The abuse did not end with McNally. He eventually placed an ad on Craigslist and shared her sexually with two other men on at least five occasions. McNally often watched and joined in on the sex acts with these other men. He callously referred to these encounters as "poker game[s.]" *Transcript* at 385. Further, McNally had the child choose and watch a porn movie as he and Moore prepared to have sex with her in Moore's bedroom. McNally later informed M.C. of a plan to have all three men together to have sex with her. This scared M.C., and she finally reported the ongoing and extreme abuse to authorities.

[30] Turning to McNally's character, we acknowledge that his criminal history is not significant. We note, however, that he was charged in 2006 with several counts of attempted child molesting. Although the charges were dismissed, this arrest record is indicative of his failure to be deterred from criminal activity even after such a significant contact with the criminal justice system. *See Vermilion v. State*, 978 N.E.2d 459, 468 (Ind. Ct. App. 2012). Moreover, McNally's character simply cannot be viewed in isolation, as his ongoing, extreme abuse of his step-daughter is the truest reflection of his character. On balance, we cannot conclude that McNally's aggregate sentence is inappropriate.

[31] Judgment affirmed.

[32] Baker, J., and Najam, J., concur.