## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2017, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy P. Broden<br>Lafayette, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
|  | Caryn N. Szyper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tony L. Brown,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 21, 2017<br><br>Court of Appeals Cause No. 79A02-1608-CR-1924<br><br>Appeal from the Tippecanoe Superior Court<br><br>The Honorable Steven P. Meyer, Judge<br><br>Trial Court Cause No. 79D02-1510-F5-56 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Tony Brown (Brown), appeals his conviction for burglary, a Level 5 felony, Ind. Code § 35-43-2-1.

We affirm.

# ISSUE

Brown presents one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by declining to tender Brown's proposed instruction regarding the reasonable theory of innocence to the jury.

# FACTS AND PROCEDURAL HISTORY

At approximately 9:30 a.m. on October 7, 2015, John Dorroll (Dorroll) observed a suspicious man, carrying a duffle bag and a backpack, lurking in front of his house. From his window, Dorroll further observed the suspicious man walk into the alley, place his duffle bag down, and walk into his neighbor's backyard. At some point, Dorroll lost sight of the man, but he reappeared in the alley and entered another neighbor's backyard. Prompted by the man's suspicious activities, Dorroll called 911.

Officers Stephen Pierce (Officer Pierce) and Mark Roberts (Officer Roberts) of the Lafayette Police Department were dispatched to the "12th and Central Streets" in Tippecanoe County, Indiana. (Transcript p. 86). When Officer Roberts arrived, he was flagged down by Dorroll who pointed him in the direction of the alley where he had last seen the suspicious man. Officer

Roberts proceeded to drive down the alley but he did not see anyone; however, he noticed an abandoned duffle bag sitting on the corner of a detached garage. Based on his findings, Officer Roberts radioed Officer Pierce and informed him that he was going to the front of the house, and he then instructed Officer Pierce to go to the backyard area of the house on "1017 Central Street" and retrieve the abandoned duffle bag. (Tr. p. 87). Officer Roberts did not find anyone in the front of the house, nor were there any signs of a break-in. Meanwhile, Officer Pierce, who was in the backyard area of the house in question, observed a man, later identified as Brown, emerge around the back area of the garage wearing a backpack and carrying the suspicious duffle bag that Officer Roberts had initially spotted. Brown avoided eye contact with Officer Pierce and he indicated that he was searching for cans in the recycle bin or anything else that he could sell for money. At that moment, Officer Pierce radioed Officer Roberts to return to the back area since he had come across Brown.

[6] When Brown was patted down for weapons, the officers found a tactical knife in Brown's right pocket and a tool that could be utilized to open a locked door. As Officer Pierce was questioning Brown, Officer Roberts observed that the garage door from where Brown had emerged "was ajar and the door handle was very [] lo[o]se." (Tr. p. 88). When Officer Roberts entered the garage, he noticed that "some things appeared to be, without ever being in that garage, . . . out of place." (Tr. p. 88). Officer Roberts contacted the homeowner, Ross Revalee (Revalee), who was at work at the time, and requested him to come home. Revalee initially informed the officers that he had locked his garage

door when he left for work that morning. After briefly inspecting his garage, Revalee informed the officers that some of the tool boxes were out of place. Nonetheless, because Revalee was unable to establish if anything had been stolen, he went back to work. In determining their next course of action, the officers decided to search Brown's backpack and duffle bag. The backpack search yielded a micrometer, two wrench sets, a volt meter, a pocket tool, and an air staple gun. In the duffle bag, the officers found clothes, an expandable baton, a pouch containing syringes, and a "Klonopin pill"—which is classified as a schedule IV controlled substance. (Appellant's App. Vol. II, p. 112). Based on the findings of the search, the officers contacted Revalee and requested him to come back to the house. Upon seeing the pile of tools, Revalee immediately identified them as his own, and he further stated that he did not give anyone permission to use his tools.

[7] On October 14, 2015, the State filed an Information, charging Brown with Count I, burglary, a Level 5 felony, I.C. § 35-43-2-1; Count II, theft, a Class A misdemeanor, I.C. § 35-43-4-2(a); Count III, possession of a schedule IV controlled substance, a Class A misdemeanor, I.C. § 35-48-4-7(a); Count IV, possession of paraphernalia, a Class C misdemeanor, I.C. § 35-48-4-8.3(a)(1); and Count V, theft with a prior conviction, a Level 6 felony, I.C. § 35-43-4-2. In addition, the State alleged that Brown was a habitual offender. On May 9, 2016, the State amended Count III by changing the schedule IV controlled substance to "Alprazolam." (Appellant App. p. 76). On May 10, 2016, at the start of his jury trial, Brown agreed to plead guilty to Counts III and IV—

possession of a schedule IV controlled substance, and possession of paraphernalia, respectively. Brown's jury trial was bifurcated. The first phase involved his theft and burglary charges, and the second related to his theft with a prior conviction and habitual offender charge. In the preliminary jury instructions, the trial court instructed the jury on the presumption of innocence, the State's burden to prove beyond a reasonable doubt that Brown is guilty of the burglary and theft charges, and the court also explained that Brown is not required to present any evidence to prove his innocence. Officers Pierce and Roberts, as well as Dorroll and Revalee testified for the State. Brown did not testify.

[8] During the final jury instructions conference, the trial court stated that after reading Brown's sole proposed instruction concerning circumstantial evidence, it recognized that the instruction tendered by Brown was "outdated" and indicated that it would replace that pattern instruction with the revised version. (Tr. p. 117). Specifically, Brown's proposed jury instruction read as follows:

> Direct evidence means evidence that directly proves a fact, and that, if true, conclusively establishes that fact.
>
> Circumstantial evidence means evidence that proves a fact from which you may conclude the existence of other facts.
>
> It is not necessary that facts be prove[n] by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. A conviction may be based solely on circumstantial evidence. Where proof is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence.

(Appellant's App. Vol. II, p. 50).  While issuing the new instruction, the following exchange occurred between Brown's counsel and the trial court:

> [TRIAL COURT]:  So, what I'm proposing is I'm not going to grant your instruction [] and I'm taking away the original proposed court's instruction and replacing it with the new instruction that has been re—written that came out the beginning of this year.
>
> [DEFENSE COUNSEL] []  Okay.
>
> [TRIAL COURT]:  It does not include all the concepts [] that you are looking to include . . . .

(Tr. p. 117).  The trial court then proceeded to read out the new instruction on direct and circumstantial evidence.  The court's new instruction provided:

> The parties in this case may prove a fact by one of two types of evidence—direct evidence or circumstantial evidence.
>
> Direct evidence is direct proof of a fact.  Circumstantial evidence is indirect proof of a fact.
>
> For example, direct evidence that an animal ran in the snow might be the testimony of someone who actually saw the animal run in the snow.  On the other hand, circumstantial evidence that an animal ran in the snow might be the testimony of someone who only saw the animal's tracks in the snow.
>
> It is not necessary that any fact be prove[n] by direct evidence.  You may consider both direct evidence and circumstantial evidence as proof.

(Appellant's App. Vol. II, p. 43). After reading its proposed instruction, the trial court stated, in part, "So, this is the instruction I am proposing to give since it is the recommended circumstantial evidence instruction, and based on that [defense counsel] I'll hear you if you want to make any further argument on your proposed instruction on circumstantial evidence." (Tr. p. 118). Brown's counsel, did not object to the trial court's instruction and he stated, "[I]f this is what's currently the rule, I mean the recommended - I don't know anything special about this case that would prohibit us from using the regular instruction." (Tr. p. 118). During the parties' closing arguments, Brown's counsel argued that the State failed to meet its burden on the burglary offense. Specifically, he hypothesized that it was possible that the garage door had been blown open by the wind and Brown simply walked into the open garage and took Revalee's tools; thus, the State failed to prove the breaking and entering element for the burglary offense. After the jury deliberated, Brown was found guilty of the theft and burglary charges.

[9] At the commencement of Brown's second phase of his jury trial, Brown waived his right to a jury and agreed to plead guilty to the remaining charges; theft with a prior conviction and for being a habitual offender. On June 9, 2016, the trial court conducted Brown's sentencing hearing. At the close of the evidence, the trial court merged Brown's convictions for theft and theft with a prior conviction with his burglary conviction. Subsequently, the trial court sentenced Brown to a term of seven years for the burglary offense, which included a three-year enhancement, with two years suspended to probation. Additionally, the

trial court sentenced Brown to concurrent sentences of sixty days for the possession of paraphernalia charge and one year for the possession of a schedule IV controlled substance offense. Brown's aggregate sentence is seven years, with five years executed and two years suspended to probation.

[10] Brown now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Brown contends that the trial court erred by refusing his tendered instruction on circumstantial evidence which included the *reasonable theory of innocence*. Instructing the jury is a matter assigned to the sound discretion of the trial court, and we review a trial court's decisions only for an abuse of discretion. *Smith v. State*, 668 N.E.2d 661, 662 (Ind. 1996). When reviewing a challenge to a jury instruction, we will "considers whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions . . . ." *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind. 2001) (internal citations omitted). An instruction is erroneous when, taken as a whole, it misstates the law or otherwise misleads the jury. *Isom v. State*, 31 N.E.3d 469, 484-85 (Ind. 2015).

[12] The State initially argues that Brown failed to object to the trial court's final jury instruction on circumstantial evidence when it was offered. We agree. In the instant case, when the trial court informed Brown that it would replace his tendered instruction with an up-to-date pattern instruction on circumstantial

evidence, Brown did not object, in fact, he expressly agreed to it. Because Brown failed to object to the jury instruction, we will only reverse if we are persuaded that the error here was fundamental—meaning that the erroneous instruction was so prejudicial as to make a fair trial impossible. *Rosales v. State*, 23 N.E.3d 8, 11 (Ind.2015).

[13] Brown initially posits that since the State's case against him on the burglary offense consisted of purely circumstantial evidence, he was entitled to his proposed instruction on circumstantial evidence which included the reasonable theory of innocence. Our supreme court in *Hampton v. State*, 961 N.E.2d 480 (Ind. 2012), reviewed its prior jurisprudence as to when a defendant is entitled (and indeed required) to receive a so-called "reasonable theory of innocence" jury instruction:

> When the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.*

*Id*. at 491 (emphasis in original). Where appropriate, this "reasonable theory of innocence instruction" provides "a safeguard urging jurors to carefully examine the inferences they draw from the evidence presented, thereby helping to assure that the jury's reasoning is sound." *Id*. at 486. It "informs the jury that if a *reasonable* theory of innocence can be made of the circumstantial evidence, then there exists a reasonable doubt, and the defendant is entitled to the benefit of

that doubt." *Id*. (emphasis in original). In *Hampton*, the only evidence that the defendant raped and murdered the victim was his DNA in her vagina, which plausibly could have arrived there through consensual sex. *Id*. at 494. Because that circumstantial DNA evidence was the only evidence, the trial court was required to give the "reasonable theory of innocence" instruction to the jury. *Id*. at 494-95.

[14] Here, Brown only challenges the trial court's refusal to instruct the jury on the last sentence of his proposed jury instruction which provided, "[W]here proof is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence." (Appellant's App. Vol. II, p. 50). In support of his argument, Brown contends that the evidence presented to the jury relating to his burglary offense was exclusively circumstantial since there was no eye witness to the crime.

[15] We recognize that direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." BLACK'S LAW DICTIONARY 636 (9th ed.2009). Conversely, circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." *Id.* Indiana case law has expressed it thusly: "Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact. Circumstantial evidence means evidence that proves a fact from which an

inference of the existence of another fact may be drawn." *Hampton*, 961 N.E.2d 489.

[16] Brown maintains that since there was no direct evidence to prove the burglary charge, a reasonable theory of innocence instruction was necessary under *Hampton*. We agree. To convict Brown of a Level 5 felony burglary under Indiana Code section 35-43-2-1, the State was required to prove beyond a reasonable doubt that Brown broke and entered Revalee's garage, with the intent to commit theft therein. Doroll testified that he called 911 after he observed a suspicious man, who was wearing a backpack and carrying a duffle bag, lurking in his neighborhood. Moments later, the officers who were dispatched in the area encountered Brown outside Revalee's garage. One of the officers observed that Revalee's garage door, closely to where Brown had appeared from, "was ajar and the door handle was very [] lo[o]se." (Tr. p. 88). Upon searching Brown's backpack, the officers found several tools which Revalee identified as belonging to him. Because there was no direct evidence of Brown breaking and entering Revalee's garage, the jury nevertheless could have reasonably inferred from the foregoing circumstantial evidence that Brown committed burglary.

[17] Notwithstanding the fact that the jury convicted Brown on the burglary offense absent a reasonable theory of innocence instruction as that espoused in *Hampton*, we find the instructional error was not so prejudicial such that it rendered an unfair trial to Brown.

[18] Although the evidence proving that Brown committed burglary was circumstantial, it was nevertheless substantial. *See Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000) (holding that a verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt). As discussed, Revalee indicated that he had locked his garage before he left for work on the morning of the burglary. Brown was seen by Dorroll—Revalee's neighbor—looking through cars and neighbor's backyard's, and that fact prompted Dorroll to call the police. The officers who were dispatched in the area found Brown near Revalee's garage, and a subsequent search of his backpack yielded Revalee's tools. In his last argument, Brown directs our attention to his counsel closing remarks stating that it was possible that the garage door had been blown open by the wind, and based on that, he simply walked into the open garage and took Revalee's tools. In the instant case, shortly before the jury retired for deliberations, the trial court emphasized that "statements made by the attorneys are not evidence." (Tr. p. 142). Our court presumes that a jury follows the instructions that it is given. *See R.T. v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006), *trans. denied*.

[19] Here, the trial court's final instruction which swapped Brown's proposed instruction on reasonable theory of innocence stated, in part, that "[I]t is not necessary that any fact be prove[n] by direct evidence. You may consider both direct evidence and circumstantial evidence as proof." (Appellant's App. Vol. II, p. 43). In addition, that the trial court instructed the jury of the following: the essential elements of the burglary offense; Brown's presumption of

innocence; that the court's instructions are the best source in determining the law; and to consider all the instructions as a whole. Again, we presume that that a jury follows the instructions that it is given. *See R.T.*, 848 N.E.2d at 332. Because there was overwhelming evidence from which the jury could independently conclude that Brown broke into Ravelee's garage and stole Revalee's tools, we conclude that the failure to instruct the jury on Brown's proposed instruction did not render Brown's trial unfair.

[20] In sum, we conclude that the circumstantial evidence supports Brown's burglary conviction, and that a reasonable jury would have rendered a guilty verdict even if Brown's instruction on reasonable theory of innocence had been issued.

## CONCLUSION

[21] In sum, we conclude that because Brown failed to object when the trial court replaced his proposed reasonable theory of innocence instruction, he waived the instruction error; however, waiver notwithstanding, the instruction error did not render his trial unfair since a reasonable jury would have still rendered a guilty verdict on Brown's burglary offense based on the overwhelming evidence of guilt.

[22] Affirmed.

[23] Crone, J. and Altice, J. concur