## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 7:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter D. Todd
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine M. Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel R. Rose, *Appellant-Defendant,* | September 8, 2017 |
| | Court of Appeals Case No. 20A03-1703-CR-641 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Teresa L. Cataldo, Judge |
| | Trial Court Cause No. 20D03-1610-F4-48 |

**Bailey, Judge.**

# Case Summary

[1] Following a jury trial, Daniel R. Rose ("Rose") was convicted of (1) Unlawful Possession of a Firearm by a Serious Violent Felon, as a Level 4 felony;[1] (2) Possession of Methamphetamine, as a Level 4 felony;[2] and (3) Possession of Marijuana, as a Class B misdemeanor.[3] Rose now appeals, raising a single issue which we restate as whether the trial court erred in restricting his cross-examination of a witness and thereby deprived him of a fair trial.

[2] We affirm.

# Facts and Procedural History

[3] On September 29, 2016, the Elkhart County Interdiction and Covert Enforcement Unit ("ICE Unit") was conducting surveillance related to a possible firearm transaction and began observing a truck driven by Douglas Flick ("Flick") in which Rose was a passenger. At some point, Flick and Rose met with Courtney Fox ("Fox") and got into a vehicle that she had been driving. In doing so, Rose brought a black backpack with him. Flick sat in the driver's seat, Fox was in the front passenger seat, and Rose sat behind Fox.

[4] Flick began driving and the vehicle was followed by Sergeant Jack Oldroyd ("Sergeant Oldroyd") of the Elkhart Police Department who was assigned to

---

[1] Ind. Code § 35-47-4-5(c).

[2] I.C. §§ 35-48-4-6.1(a), -(c)(2).

[3] I.C. § 35-48-4-11(a)(1).

the ICE Unit. Sergeant Oldroyd observed Flick commit two traffic violations and subsequently initiated a traffic stop. As Sergeant Oldroyd approached the vehicle, Rose leaned to the left as though he was reaching for something. Rose then bent forward and reached toward the floor in front of him. Rose's actions appeared furtive and Sergeant Oldroyd called for backup.

An eventual search of the vehicle revealed several items of contraband. There was a 9mm handgun under the front passenger seat as well as a zippered case that contained methamphetamine and marijuana in red-striped Ziploc baggies. To the left of where Rose had been sitting, there was a black backpack that contained 9mm ammunition and empty baggies of the same red-striped style.

In addition to these items, law enforcement located a red bag that Flick claimed as his. The bag contained another handgun and methamphetamine. Fox also relinquished fifty Oxycontin pills. Additionally, law enforcement located a woman's jacket in the backseat, under the black backpack, that contained nearly thirty grams of methamphetamine.

The State charged Rose with possessing the contraband located under Fox's seat and a jury found Rose guilty. Rose now appeals.

# Discussion and Decision

Rose argues that the trial court erred in prohibiting him from eliciting certain testimony and that the error deprived him of the right to a fair trial under the

United States Constitution.[4]  "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb the court's ruling only where it is shown the court abused that discretion.  'But where, as here, a constitutional violation is alleged, the proper standard of appellate review is de novo.'" *Leonard v. State*, 73 N.E.3d 155, 168 (Ind. 2017) (citation omitted) (quoting *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013), *cert. denied*).

[9]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees criminal defendants the right to a fair trial, and the basic elements of a fair trial are defined largely through provisions of the Sixth Amendment.  *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).  Among a defendant's Sixth Amendment rights is the right of confrontation that serves the essential purpose of securing the opportunity to conduct cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  Moreover, the Fourteenth Amendment and the Sixth Amendment collectively "guarantee[] criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  That is, a criminal defendant has "the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'"  *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)); *see also Strickland*, 466 U.S. at 685 ("[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for

---

[4] Rose makes no argument under the Indiana Constitution.

resolution of issues defined in advance of the proceeding.").  Nonetheless, "[a]
criminal defendant does not enjoy an unlimited constitutional right to offer
exculpatory evidence."  *Hubbard v. State*, 742 N.E.2d 919, 922 (Ind. 2001).
Rather, when

> the defendant's Sixth Amendment right to present a defense
> collides with the State's interest in promulgating rules of evidence
> to govern the conduct of its trials, the merits of the respective
> positions must be weighed, [and] the State's interest must give
> way to the defendant's rights if its rules are "mechanistically"
> applied to deprive the defendant of a fair trial.

*Id.* (quoting *Huffman v. State*, 543 N.E.2d 360, 375 (Ind. 1989)*, overruled in part
on other grounds*, *Street v. State*, 567 N.E.2d 102 (Ind. 1991)).

[10]   At trial, the primary defense theory was that Fox put the contraband under her
seat.  While conducting cross-examination, Rose sought to elicit testimony
concerning Fox's relationship with law enforcement, including her work as a
confidential informant.  Rose also sought to elicit testimony that when Sergeant
Oldroyd initiated the traffic stop, Fox called an officer from the ICE Unit on
her cellphone—an officer who later responded to the scene and testified against
Rose.  When the State objected to these lines of cross-examination, Rose argued
that the testimony would cast doubt on Fox's credibility and be indicative of
bias, particularly because Fox was not immediately arrested for possessing the
pills and was not questioned about the methamphetamine in the woman's
jacket for which no one was ever charged.  The trial court sustained the State's
objection, concluding that the testimony was not relevant under the totality of

the circumstances. In doing so, the trial court also expressed concern that "the harm that could result to the . . . witness on the stand [was] substantially greater than any benefit that c[ould] be derived from the defense asking the witness to disclose, public[ly], who she spoke with during th[e] stop." Tr. Vol. III at 77.

[11] "The partiality of a witness is subject to exploration at trial, and is always relevant as [to] discrediting the witness and affecting the weight of his testimony." *Davis*, 415 U.S. at 316 (quotation marks omitted). Indeed, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* Moreover, "without knowing [a] witness' status as an informant, 'the jury d[oes] not have the necessary information from which to make a meaningful evaluation'" of the witness' credibility. *Standifer v. State*, 718 N.E.2d 1107, 1110 (Ind. 1999) (quoting *Janner v. State*, 521 N.E.2d 709, 716 (Ind. Ct. App. 1988)).

[12] Here, Rose was entitled to elicit testimony concerning Fox's work as a confidential informant, a role that bore on her credibility as a State witness. Thus, the closure of these lines of questioning offended Rose's right of cross-examination. Nevertheless, when a trial court limits cross-examination in violation of this right, a "conviction will be sustained only if the error is harmless beyond a reasonable doubt." *McCorker v. State*, 797 N.E.2d 257, 266 (Ind. 2003); *see also McCarthy v. State*, 749 N.E.2d 528, 534 (Ind. 2001).

> Whether the trial court's error is harmless depends on several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*Standifer*, 718 N.E.2d at 1111 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

[13]   In arguing that the error rendered his trial fundamentally unfair, Rose likens this case to *Chambers v. Mississippi*, 410 U.S. 284 (1973), wherein a defendant had been prohibited from eliciting testimony that a third party had confessed, on several occasions, to committing the murder for which the defendant was on trial—potential evidence that the United States Supreme Court deemed critical enough to warrant a new trial. Here, however, the testimony Rose sought to elicit was not as critical nor did Fox play a vital role in the prosecution of the case. Disregarding all testimony from Fox, the evidence indicates that law enforcement saw Rose bring a black backpack into the vehicle. When Sergeant Oldroyd initiated the traffic stop, Rose made furtive movements to the left—toward the area the backpack was found—and then toward the floor in front of him. Police found the handgun, methamphetamine, and marijuana in the area where Rose had reached, and the drugs were located in plastic baggies of the same style as those in the black backpack, which also contained ammunition. The drugs found elsewhere in the vehicle were in different kinds of baggies.

[14]   Ultimately, this case turned on whether Rose concealed the contraband. At trial, Rose had ample opportunity to cross-examine a witness who testified that

because of the configuration of the area underneath the seat and the presence of trash wedged from the front, a front-seat passenger would be unable to slide the handgun and zippered case to the back of the under-seat area. Rose also elicited testimony regarding the potentially exculpatory position of the handgun, which was located with the grip closer to the front of the seat. There was also potentially exculpatory testimony that Fox had access to the vehicle and that Flick had recently loaned the vehicle to several others. Additionally, Rose elicited testimony that he did not leave his residence with a backpack and he testified to leaning to the left only to retrieve his wallet.

[15] In light of the strength of the State's case independent of Fox's testimony as well as the extent to which Rose was able to meaningfully cross-examine the testimony central to the prosecution, we conclude that the limitation of cross-examination amounted to error that was harmless beyond a reasonable doubt.[5]

# Conclusion

[16] Although Rose's right of cross-examination was violated when the trial court limited inquiry into the potential bias of a State witness, the error was harmless beyond a reasonable doubt and therefore Rose was not deprived of a fair trial.

---

[5] In addition to arguing that the trial court erred in limiting cross-examination concerning Rose's status as an informant, Rose argues that he was improperly restrained from eliciting testimony concerning "the specifics of the plea agreement she secured related to her involvement in this case." Appellant's Br. at 10. However, the trial record indicates that Rose's counsel knew that the agreement related to methamphetamine charges Fox faced prior to the instant traffic stop and there is no indication—through an offer of proof or otherwise—that Fox received any benefit related to the instant case. Nonetheless, for the reasons discussed herein, we conclude that any error in the curtailment of cross-examination concerning Fox's credibility was harmless beyond a reasonable doubt.

[17]     Affirmed.


Altice, J., concurs.
Baker, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel R. Rose, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 20A03-1703-CR-641 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff* | |

**Baker, Judge, dissenting.**

[18] I respectfully dissent. I agree with the majority that Rose should have been permitted to elicit testimony regarding Fox's work as a confidential informant and her relationship with law enforcement. I respectfully disagree that the ruling prohibiting this evidence from admission was harmless error.

[19] I acknowledge the evidence in the record regarding Rose's backpack and his movements in the vehicle after the traffic stop was initiated. In my view, this evidence does not rise to the extremely high bar required to conclude that the erroneous limitation of Fox's cross-examination was harmless beyond a reasonable doubt.

[20] Witness bias is always relevant and important, especially in a case such as this where the evidence of the defendant's guilt is not overwhelming and where the key witness has an undisclosed relationship with law enforcement. The jury should have been permitted to assess Fox's credibility in light of her status as a confidential informant. Likewise, it should have been permitted to consider the overall situation and Rose's guilt or innocence given the relationship between Fox and the law enforcement community. It may well have been the case that the jury would have convicted Rose anyway, but I cannot reach that conclusion beyond a reasonable doubt. Therefore, I would reverse and remand for a new trial.