Charles GRAY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–0003–CR–212.

Supreme Court of Indiana.

Nov. 16, 2001.

Marion County Public Defender, Janice L. Stevens, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Charles Gray was convicted for the murder and robbery of an elderly man. We find that a police officer's affidavit provided the requisite "substantial basis" for concluding that probable cause existed. We reaffirm that our long-held rule against polygraph evidence is constitutional. And we conclude that aggravating circumstances support the sentence imposed.

### Background

The facts favorable to the judgment indicate that on September 10, 1997, 93–year–old Earl Perry was severely beaten with his own cane in his home and had $200 taken from him. Mr. Perry later died from his injuries. Before dying, Mr. Perry gave an account of what had happened, including what the assailant had said to him prior to the assault. Mr. Perry related that the assailant stated that he was friends with "Wendell," referring to Wendell Hart, a man whom Mr. Perry had hired in the past to perform chores for him. The assailant asked if Mr. Perry had any work for him, and when Mr. Perry said no, the assailant wrote a name and telephone number down on a post-it note pad. The assailant then began to beat Mr. Perry.

Detective Mitchell was assigned the case and interviewed Wendell Hart in the Morgan County Jail. Hart told Detective Mitchell about a conversation Hart had with a man about Earl Perry; Hart later identified this man as Charles Gray. Detective Mitchell found Charles Gray in March of 1998 in the Marion County Jail. At that interview, Detective Mitchell took a sample of Gray's handwriting and turned it into the Marion County Crime Lab for testing. Detective Mitchell later received notice that there were "similar characteristics" found in Gray's handwriting and the handwriting of the post-it note from the

crime scene. The crime lab requested more samples, and Detective Mitchell obtained a limited warrant in order to do this. The second set of handwriting samples confirmed that Charles Gray was the author of the post-it note.

Defendant was convicted of murder[1] and robbery.[2] He was sentenced to serve sixty-five years for the murder, and eight years for the robbery. The sentences were ordered to be served consecutively, for a total of seventy-three (73) years. Defendant appeals his conviction and sentence.

### Discussion

### I

Defendant contends that his conviction should be reversed because the probable cause affidavit used to obtain Defendant's second set of handwriting samples was invalid.[3] To support the probable cause affidavit, Detective Mitchell swore to the following facts: (1) the victim, prior to dying, had stated several times that his assailant was connected to a man named "Wendell," later identified as Wendell Hart; (2) Detective Mitchell found Hart in a correctional facility and spoke with him about Mr. Perry; (3) during this conversation, Hart recalled that he had spoken about Mr. Perry to a Charles Gray while they were both in Morgan County Jail in 1997; (4) Detective Mitchell found Charles Gray in the Marion County Jail and took a handwriting exemplar which he submitted to the crime lab; (5) the crime lab then requested some more samples of Gray's "course of business" writing as well as some more sample handwriting due to similar characteristics in Gray's handwriting

and the post-it note left on the crime scene.

Based on this information, the magistrate granted the warrant to obtain the samples. Detective Mitchell gathered the second set of handwriting samples from Defendant, which later proved to be conclusive evidence that Defendant was the person who authored the post-it note at the crime scene. The trial court upheld the validity of the probable cause affidavit and denied Defendant's Motion to Suppress the handwriting samples.

■ To be valid, a warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law.[4] In order to comply with these restrictions, the magistrate's task is "simply to make a practical, commonsense decision whether, given all the circumstances set forth before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ As the reviewing court, our duty under the Fourth Amendment is to determine whether the magistrate issuing the warrant had a "substantial basis" for concluding that probable cause existed. *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317. While significant deference is due to the magistrate's determination, our search for substantial basis must focus on whether "reasonable inferences drawn from the totality of the evidence support the determi-

---

**1.** Ind.Code § 35–42–1–1 (1998).

**2.** Ind.Code § 35–42–5–1 (1998).

**3.** Defendant had previously consented to the first set of samples taken by Detective Mitchell in March of 1998.

**4.** Ind. Const. art. I, § 11; Ind.Code § 35–33–5–2 (1998).

nation." *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997).

■ Defendant argues that the affidavit was defective in two ways. First, he says the affidavit was supported by uncorroborated hearsay from an unreliable source. Second, he says Detective Mitchell omitted key facts, thereby misleading the magistrate issuing the warrant. (Appellant's Br. at 16–17.) As a result, Defendant argues, the handwriting samples were obtained in violation of his Fourth Amendment and Indiana statutory rights and should have been excluded from evidence.

We conclude that when deciding to issue the warrant, the magistrate had facts from which it could reasonably infer that there was probable cause to believe Charles Gray had authored the post-it note at the crime scene. The affidavit contained the manner in which Detective Mitchell discovered how Charles Gray was connected to Mr. Perry. After finding out this connection, Detective Mitchell took a handwriting sample from Gray. Based on the similar characteristics of the first sample, Detective Mitchell sought the warrant in issue to obtain a second set. All other facts in the affidavit merely provide context for the situation. The totality of the evidence presented in the affidavit clearly supports the magistrate's determination that there was substantial basis for probable cause. *See Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317; *Houser*, 678 N.E.2d at 99.

As to Defendant's two specific claims, we conclude that the affidavit was not supported by hearsay, as Defendant contends. Wendell Hart's hearsay statements to Detective Mitchell initially led Detective Mitchell to Charles Gray. However, it was the "similar characteristics" between the first set taken from Gray and the crime scene post-it note that supported Detective Mitchell's probable cause affidavit.

Likewise, the affidavit was not defective because Detective Mitchell omitted a key fact, *to wit*, that Hart could not identify Charles Gray by name. Hart picked Gray out of a photo array of those who had been in Hart's cell block at the time of the conversation. This omission, intentional or unintentional, did not mislead the magistrate. The manner in which Charles Gray became connected to the case was not important to the affidavit. As such, Detective Mitchell's conversation with Hart was mere context for the magistrate. The similar characteristics found between the first handwriting sample and the crime scene post-it note provided the substantial basis needed by the magistrate.

## II

■ Defendant contends that he was denied his right to present a defense under the Sixth Amendment of the United States Constitution because he was not allowed to cross-examine a police detective about a polygraph examination of a potential suspect, Robert Smith. Defendant argues that this evidence was relevant to his defense that someone else assaulted and robbed Mr. Perry.

■ Polygraph examinations are generally not admissible as evidence in Indiana. *Perry v. State*, 541 N.E.2d 913, 915 (Ind. 1989). This is because of the inherent unreliability of polygraph examinations. *See Hubbard v. State*, 742 N.E.2d 919, 923–24 (Ind.2001). Earlier this year in *Hubbard* we gave extended treatment to a defendant's claim that our rule against the use of polygraph evidence conflicted with his constitutional right to present a defense. We reaffirm that analysis and again conclude that the "defendant's limited interest in putting on unreliable evidence does not outweigh the State's interest in ensuring that [only reliable evidence is introduced at trial]." *Id.* at 924; *see*

*also United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (holding that a per se rule excluding all polygraph evidence did not abridge the defendant's right to present a defense under the United States Constitution).

The polygraph examination of Robert Smith constituted unreliable evidence. In balancing the interests of a fair trial with the constitutional interests of Defendant, the trial court did not err in excluding the polygraph evidence. *See Hubbard*, 742 N.E.2d at 923; *Scheffer*, 523 U.S. at 309, 118 S.Ct. 1261.

### III

Defendant contends that it was improper for the trial court to impose consecutive sentences based on the violence of the offense. (Appellant's Br. at 18.)

■ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance sentence to reflect aggravating circumstances or reduce it to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996) (citing *Reaves v. State*, 586 N.E.2d 847 (Ind. 1992)). *See* Ind.Code § 35–38–1–7.1(b) (a court may consider aggravating circumstances in determining whether to impose consecutive sentences).

■ When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). The trial

court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind. 1996)).

■ At the sentencing hearing, the trial court identified five aggravating circumstances: (1) Defendant had a history of criminal activity that went as far back as 1980; (2) Defendant was on probation when he committed the murder and robbery of the victim; (3) Defendant was in need of correctional rehabilitative treatment best provided by commitment to a penal facility due to the fact that all other attempts at rehabilitation had failed; (4) the victim of the crime was 93 years old, and physically infirm; (5) the nature of the crime was particularly heinous in that Defendant beat the victim with the victim's own cane where no force would have been necessary to rob the victim.

The trial court also identified one mitigating circumstance, that is, the Defendant's drug addiction. The court then weighed the aggravating and the mitigating circumstances, and found that the aggravating circumstances outweighed the mitigating. The trial court sentenced Defendant to sixty-five (65) years for the murder, and eight years for the robbery, to be served consecutively for a total of seventy-three (73) years.

Defendant contends that the trial court failed to identify any aggravating circumstances when it imposed the sentences consecutively, other than the violent nature of the offense. (Appellant's Br. at 19–

20.) While this appears to be the case, it does not entitle Defendant to relief. We have held that the violent nature of a crime is a sufficient aggravating circumstance to justify consecutive sentences. *See Sanquenetti v. State,* 727 N.E.2d 437, 443 (Ind.2000). And even if we were to find it insufficient here, we likely would find, in the exercise of our constitutional authority to review and revise sentences,[5] that the aggravating circumstances articulated by the trial court to support enhancing the murder count's sentence support consecutive sentences as well. *See Mitchem,* 685 N.E.2d at 680.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.