## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 11 2019, 10:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles W. Gray
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles W. Gray, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 11, 2019 <br><br> Court of Appeals Case No. 18A-PC-1705 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt M. Eisgruber, Judge <br><br> The Honorable Steven J. Rubick, Magistrate <br><br> Trial Court Cause No. 49G01-9810-PC-157515 |

**Najam, Judge.**

# Statement of the Case

Charles W. Gray appeals the post-conviction court's denial of his petition for post-conviction relief. Gray raises four issues for our review, which we restate as the following two issues:

1. Whether the post-conviction court erred when it concluded that Gray did not receive ineffective assistance of trial counsel.

2. Whether the post-conviction court erred when it concluded that Gray did not receive ineffective assistance of appellate counsel.

We affirm.

# Facts and Procedural History

In February of 2000, a jury found Gray guilty of murder and robbery. The trial court entered its judgment of conviction against Gray and sentenced him to an aggregate term of seventy-three years. On direct appeal, the Indiana Supreme Court described the factual basis for Gray's convictions and sentence as follows:

> The facts favorable to the judgment indicate that on September 10, 1997, 93-year-old Earl Perry was severely beaten with his own cane in his home and had $200 taken from him. Mr. Perry later died from his injuries. Before dying, Mr. Perry gave an account of what had happened, including what the assailant had said to him prior to the assault. Mr. Perry related that the assailant stated that he was friends with "Wendell," referring to Wendell Hart, a man whom Mr. Perry had hired in the past to perform chores for him. The assailant asked if Mr. Perry had any

work for him, and when Mr. Perry said no, the assailant wrote a name and telephone number down on a post-it note pad. The assailant then began to beat Mr. Perry.

Detective Mitchell was assigned the case and interviewed Wendell Hart in the Morgan County Jail. Hart told Detective Mitchell about a conversation Hart had with a man about Earl Perry; Hart later identified this man as Charles Gray. Detective Mitchell found Charles Gray in March of 1998 in the Marion County Jail. At that interview, Detective Mitchell took a sample of Gray's handwriting and turned it into the Marion County Crime Lab for testing. Detective Mitchell later received notice that there were "similar characteristics" found in Gray's handwriting and the handwriting of the post-it note from the crime scene. The crime lab requested more samples, and Detective Mitchell obtained a limited warrant in order to do this. The second set of handwriting samples confirmed that Charles Gray was the author of the post-it note.

*Gray v. State*, 758 N.E.2d 519, 520-21 (Ind. 2001).

[4] On direct appeal, Gray asserted that his convictions should be reversed "because the probable cause affidavit used to obtain [his] second set of handwriting samples was invalid." *Id.* at 521. He also argued that the trial court had improperly refused to admit into evidence a polygraph examination of a police detective about another potential suspect, Robert Smith, whom Gray asserted may have been the true culprit. *Id.* at 522. And Gray challenged his sentence. Our Supreme Court affirmed Gray's convictions and sentence.

[5] In January of 2016, Gray filed an amended petition for post-conviction relief. In that petition, Gray alleged that he had received ineffective assistance from

his two trial attorneys when they had failed to raise a number of objections. Gray also alleged that he had received ineffective assistance from his appellate counsel "when Appellate Counsel failed to raise every possible meritorious error," namely, the alleged errors of his trial attorneys. Appellant's App. Vol. 2 at 68. After a fact-finding hearing, the post-conviction court entered findings of fact and conclusions of law in which it denied Gray's petition for post-conviction relief. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[6]     Gray appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction

that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

### *Issue One: Trial Counsel*

Gray first asserts that the post-conviction court erred when it denied his petition because he received ineffective assistance of trial counsel. As our Supreme Court has made clear:

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

*Id.* at 682.

Gray alleges ineffective assistance from his trial attorneys on seven grounds. Each of the grounds is premised on his attorneys' purported failures to object. "[I]n order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection

would have been sustained if made." *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013). Moreover, counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Lambert v. State*, 743 N.E.2d 719, 730 (Ind. 2001). We address each of Gray's seven arguments in turn.

## Failure to Object to Handwriting Expert's Testimony

[9] First, Gray asserts that his trial attorneys ineffectively failed to object to certain testimony regarding the handwriting evidence. In particular, Gray asserts that two of the State's witnesses offered "numerous conclusions" that went beyond helping the trier of fact to understand the evidence or to determine a fact in issue. Appellant's Br. at 11 (citing Ind. Evidence Rule 702). Gray cites the following testimony as that to which his trial attorneys should have objected: a State witness testifying that handwriting analysis is a 100-year-old forensic science; the State's handwriting expert testifying that she "concluded" Gray was the writer of the note found at the crime scene; that expert testifying that she had "positively" identified Gray as the author of the note; her testimony that she was "absolutely certain" that Gray wrote the note; and her testimony that she was "100 percent certain" that Gray wrote the note. *Id.* at 14; *see* R. of Proceedings Vol. 4 at 282;[1] R. of Proceedings Vol. 5 at 6-7, 17.

---

[1] Our pagination to the volumes of the original Record of Proceedings is based on the .pdg pagination.

[10] In addressing Gray's argument on this issue, the post-conviction court found as follows:

> A substantive review of the expert witness's entire testimony reveals that her "conclusions" were simply the product of carefully explained expert opinions. Her opinions, conclusions[,] and qualifications were subjected to lengthy and aggressive cross-examination by defense counsel. As such, it is clear that[,] if Defendant's trial counsel had raised the objection he now urges, such objection would not have been sustained. As such, Defendant has failed to meet his burden of proof.

Appellant's App. Vol. 2 at 131.

[11] Gray's argument on appeal merely repeats his complaints about the testimony of the State's witnesses at trial. At no point does Gray argue that, had his trial attorneys objected as he now alleges they should have, that such an objection would have been sustained. Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue.

### References to the Victim's Time and Place of Death

[12] Second, Gray asserts that his trial attorneys ineffectively failed to object to testimony from a State witness, the victim's daughter, that Perry had been killed in a chair in his home on the day of the attack when in fact Perry died from those injuries the next day at a hospital. On this issue, the post-conviction court found as follows:

Defendant contends that the evidence shows that the victim died in a hospital the day after he was beaten in his home during a robbery[;] thus[,] the daughter lied when she said he was killed in his home. Defendant argues further that this harmed his case because the daughter's testimony diverted the jury's attention from possible intervening causes from poor medical care. On this issue, it is not necessary to discuss the issue of intervening causation because Defendant has presented no evidence on the issue. Additionally, . . . objecting and arguing with a woman whose elderly father has been beaten to death bore no direct or substantial relationship to the main thrust of the defense and was unlikely to have a positive effect on the jury. Thus, Defendant has failed to show his counsels' alleged failure to act or choice of strategy harmed his case.

*Id.* at 132.

[13] On appeal, Gray asserts that "[w]hen the victim was transported to the hospital he merely had a cut on his ear and therefore his other injuries he apparently died from [were] the result of hospital treatment during and after transport." Appellant's Br. at 16. But the post-conviction court expressly found that Gray had "presented no evidence" in support of those assertions. Appellant's App. Vol. 2 at 132. And Gray does not argue that the post-conviction court erred in that assessment, nor does he provide citations to the record on appeal to support his assertions. Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue.

## Autopsy Photographs

Third, Gray asserts that his trial attorneys "failed to object to the Medical Examiner's manipulated autopsy photos . . . ." Appellant's Br. at 17. According to Gray, the autopsy photographs admitted into evidence "had been manipulated and were not originals . . . ." *Id.* In particular, Gray asserts that "[t]hese photographs were not accurate and had been magnified making the wounds appear to be much worse than they actually appeared. These photographs further reflected damage to the wounds cause[d] by the Medical Examiner . . . ." *Id.* at 18.

On this issue, the post-conviction court found as follows:

> Defendant does not provide any legal basis for an objection to [these] photographs. The photographs were not gratuitously gruesome and they were specifically related to the coroner's testimony. Consequently, there would have been no basis for an objection along the lines Defendant contends and he has again failed to meet his burden of proof.

Appellant's App. Vol. 2 at 132.

On appeal, Gray asserts that his attorneys should have objected to the autopsy photographs under Indiana Evidence Rules 1001 to 1004. But Gray presents no cogent argument on appeal that any such objection, if made, would have been sustained. Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue.

Fourth, Gray asserts that his attorneys should have objected to the jury instructions. In particular, Gray asserts that his attorneys should have objected to two instructions that told the jurors they "should" find Gray either guilty or not guilty depending on whether the State did or did not meet its burden of proof. Appellant's Br. at 19. Gray asserts that "should" in this context was required to have been "must." *Id.*

On this issue, the post-conviction court found as follows:

> This is one our appellate courts have repeatedly addressed. In reviewing this issue, appellate courts have repeatedly held that using "should" is appropriate when other instruction[s] also inform the jury as to the elements of the crime and as [to] their duties as triers of facts. In this case, the jury was properly instructed as to its role and as to the law and Defendant has failed to demonstrate[] that the trial court's instructions were erroneous; as such, any objection to the instructions would have been overruled and Defendant's trial counsels were not ineffective for failing to make a baseless objection.

Appellant's App. Vol. 2 at 133-34 (citations omitted).

On appeal, Gray simply asserts that he "disagrees" with the post-conviction court's analysis. Appellant's Br. at 20. But we don't. *E.g.*, *Burgett v. State*, 758 N.E.2d 571, 577-78 (Ind. Ct. App. 2001), *trans. denied*. And Gray does not suggest on appeal that the jury instructions as a whole diminished the State's burden of proof. *See id.* Accordingly, Gray has not met his burden on appeal of

demonstrating that the post-conviction court's judgment is contrary to law on this issue.

<u>Alleged *Brady* Violation</u>

[20] Fifth, Gray asserts that his trial attorneys "failed to object to the State's *Brady* violation for failing to turn over full and complete medical records concerning the victim . . . ."[2] Appellant's Br. at 20. As we have explained:

> In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *Minnick v. State*, 698 N.E.2d 745, 755 (Ind. 1998) (citing *Brady*, 373 U.S. at 87). Evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, the State will not be found to have suppressed material evidence if it was available to a defendant through the exercise of reasonable diligence. *Conner v. State*, 711 N.E.2d 1238, 1246 (Ind. 1999). "Favorable evidence" includes both exculpatory evidence and impeachment evidence. *See Prewitt v. State*, 819 N.E.2d 393, 401 (Ind. Ct. App. 2004), *trans. denied*. Suppression

---

[2] Gray attempted to subpoena Perry's medical records, but the post-conviction court denied his requests.

of *Brady* evidence is constitutional error warranting a new trial. *Turney v. State*, 759 N.E.2d 671, 675 (Ind. Ct. App. 2001), *trans. denied*.

*Bunch v. State*, 964 N.E.2d 274, 297-98 (Ind. Ct. App. 2012), *trans. denied*.

[21] The post-conviction court found as follows:

> On this point, Defendant has again failed to meet his burden of proof. Defendant contends that through pretrial discovery the State produced 61 pages of the victim's medical records. Defendant nevertheless claims that more than [100] documents exist concerning the treatment of the victim and argues that the "missing documents" are "believe[d ]to have exculpatory evidence that could have been used to impeach the State's expert witnesses on the stand under oath." The evidence produced in the post-conviction proceedings provide no basis for Defendant's claim . . . and there is no basis for the claim that such records, if they existed, were exculpatory. Without properly admitted proof of suppressed material evidence there can be no finding of a *Brady* violation and, by extension, no basis for a claim of ineffective assistance of trial counsel on this issue.

Appellant's App. Vol. 2 at 134-35 (citation omitted).

[22] On appeal, Gray baldly asserts that "[i]t can be proven that over [100] documents exist concerning the treatment of the victim" and that such documents "are believe[d] to have exculpatory evidence . . . ." Appellant's Br. at 21. Gray cites no support in the record for his assertions. Nor does he assert that the post-conviction court erred when it denied his request to subpoena Perry's medical records. Nor does he assert that this evidence was not available to his trial attorneys through the exercise of due diligence, or that they acted

ineffectively in not obtaining that evidence at that time. Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue.

## Reckless Homicide Instruction

[23] Sixth, Gray asserts that his trial attorneys ineffectively failed to request a jury instruction on reckless homicide as a lesser-included offense to murder. In particular, Gray argues that "counsel[s'] thinking was ineffective because[,] if the jury decided he was the one who did this crime, they should have had an opportunity to decide if it was Reckless Homicide or Murder" as "[t]he evidence proves that the [attack] was in an attempt to escape and nothing else, which lacks [the] *mens rea* for murder . . . ." Appellant's Br. at 22-23.

[24] On this issue, the post-conviction court found as follows:

> trial counsel's testimony at the evidentiary hearing established that the defense strategy was that Defendant was not the one who committed the crime and the only issue at trial was identification. Trial counsel stated that . . . it was likely that she felt that arguing for a sub-theme of reckless homicide would have been illogical and counter-productive.

Appellant's App. Vol. 2 at 135-36.

[25] Gray's argument on appeal does not address the post-conviction court's finding that his attorneys acted reasonably in not asking for a reckless-homicide instruction in light of the defense strategy of arguing that Gray was innocent. And we will not second-guess a trial counsel's reasonable trial strategies.

Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue.

## Autopsy Testimony

[26] Seventh, Gray asserts that his trial attorneys ineffectively failed to object when the State called a pathologist who did not perform Perry's autopsy to testify about that autopsy. On this issue, the post-conviction court found as follows:

> when question about the failure to object when Dr. Clark testified rather than the doctor who actually performed the autopsy, trial counsel stated that the defense was not contesting the injuries, the cause of death, or any other medical evidence. . . . Such tactical decisions do not support a finding of ineffective assistance and Defendant's claims against his trial counsel fail.

*Id.* at 136.

[27] On appeal, Gray asserts that the post-conviction court erred because the failure to properly object "denied [Gray] his right to confront his accuser" and, had the pathologist who performed the autopsy testified instead, "it would have proven reckless homicide . . . ." Appellant's Br. at 25. But, again, Gray does not actually address the post-conviction court's judgment that Gray's trial attorneys employed a reasonable strategy on this issue in light of Gray's defense of innocence. Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue. We cannot say that the post-conviction court erred when it concluded that Gray did not receive ineffective assistance of trial counsel.

### *Issue Two: Appellate Counsel*

[28] Gray next argues on appeal that he received ineffective assistance from his appellate counsel when his appellate counsel did not raise on direct appeal the seven above issues. Appellant's Br. at 27-28. As we have explained:

> As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State*, 875 N.E.2d 706, 723 (Ind. 2007). However, appellate and trial counsel have different tasks, which result in different kinds of deficient performance and prejudice. Thus, when the alleged error is that appellate counsel failed to raise issues, prejudice is based on "whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Id.* at 724. Accordingly, there is no prejudice created by appellate counsel's failure to raise an unpreserved issue that does not result in fundamental error because the issue would not have been clearly more likely to result in reversal or an order for a new trial. Put another way, if an unpreserved error is found not to be fundamental, then appellate counsel cannot be ineffective for failing to raise it.

*Benefield v. State*, 945 N.E.2d 791, 802-03 (Ind. Ct. App. 2011).

[29] As none of those seven issues Gray complains of were objected to at trial, Gray's appellate counsel would have had to raise them on direct appeal as issues of fundamental error. *Id.* However, on appeal from the post-conviction court's adverse judgment, Gray simply asserts that the "unraised issues are significant and obvious from the face of the record" and are "clearly stronger than the raised issues." Appellant's Br. at 27. We conclude that Gray's bald

assertions are not sufficient to show that any of his seven claims of fundamental error, an "extremely narrow" basis for appellate relief, would have been stronger than the claims actually raised by his appellate counsel on direct appeal. *See Durden v. State*, 99 N.E.3d 645, 653 (Ind. 2018). Accordingly, Gray has not met his burden on appeal of demonstrating that the post-conviction court's judgment is contrary to law on this issue. We affirm the post-conviction court's conclusion that Gray did not receive ineffective assistance of appellate counsel.

## Conclusion

[30] In sum, we affirm the post-conviction court's judgment.

[31] Affirmed.

Pyle, J., and Altice, J., concur.