## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael C. Keating
Law Offices of Steven K. Deig, LLC
Evansville, Indiana

Steven L. Whitehead
Princeton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Craig E. Hardiman,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 13, 2020

Court of Appeals Case No.
19A-PC-2950

Appeal from the Gibson Circuit Court

The Honorable Jeffrey F. Meade, Judge

Trial Court Cause No.
26C01-1904-PC-395

**Bradford, Chief Judge.**

# Case Summary

In 2003, Craig E. Hardiman pled guilty to Class B felony manufacturing a controlled substance. In 2019, Hardiman filed a petition for post-conviction relief ("PCR"), claiming that he had received ineffective assistance of trial counsel. Following an evidentiary hearing, the post-conviction court denied Hardiman's PCR petition. We affirm.

# Facts and Procedural History

On January 31, 2003, Gibson County Sheriff's Department officer John Alley and several other officers went to Hardiman's residence to investigate a report that Hardiman was planning to sell methamphetamine and a stolen handgun. Hardiman's residence had a detached garage and an outbuilding approximately thirty to forty feet northeast of the house. Officers attempted to locate Hardiman in both the house and garage. While attempting to locate Hardiman, the officers detected a strong smell of ether. They also observed a large propane tank with greenish corrosion and numerous items used during the process of manufacturing methamphetamine in a burn pile, in front of the outbuilding, and scattered in Hardiman's yard between the house and the outbuilding.

The next day, officers observed two males, one identified as Hardiman, at the same residence. The officers observed Hardiman carrying what appeared to be a glass blender containing a substance similar to "pill dough" and coffee filters from the outbuilding to the house. Appellant's App. Vol. II p. 27. Both officers

again detected a strong odor of ether. The officers watched Hardiman and the other individual make three separate trips from the outbuilding to the house.

[4] On February 2, 2003, Officer Alley once again detected a strong smell of ether coming from Hardiman's residence. Approximately fifteen minutes later, another officer drove by Hardiman's residence and also smelled a strong smell of ether. Later that day, Officer Alley requested a search warrant for Hardiman's residence. In support of his request, he averred that based on his training, experience, and personal observations, he believed that there was probable cause to establish that Hardiman was engaged in the manufacture and/or possession of methamphetamine. The trial judge found that there was probable cause and issued a search warrant. Various drug-related items were recovered during the subsequent search of Hardiman's residence.

[5] On February 3, 2003, the State charged Hardiman with Class B felony manufacturing a controlled substance, Class D felony possession of a controlled substance, and Class D felony possession of chemical reagents or precursors with intent to manufacture. On May 20, 2003, Hardiman pled guilty to Class B felony manufacturing a controlled substance. In exchange for his guilty plea, the State agreed to dismiss the remaining charges. The trial court sentenced Hardiman to a six-year term, which was to be served consecutive to Hardiman's thirty-four-year sentence in Cause Number 26C01-0210-FA-1, and concurrent to his sentence in Cause Number 26C01-0208-FD-67.

[6] On April 22, 2019, Hardiman filed a PCR petition, claiming that he had received ineffective assistance of counsel. The post-conviction court conducted an evidentiary hearing on Hardiman's petition on August 29, 2019. During the evidentiary hearing, trial counsel acknowledged that he had not moved to suppress the evidence recovered during the execution of the search warrant. While trial counsel testified that he could not remember why he had not filed a motion to suppress, he indicated that it is his standard practice to review a criminal case file for search and seizure issues. On November 14, 2019, the post-conviction court denied Hardiman's PCR petition.

# Discussion and Decision[1]

[7] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

---

[1] We note that in denying Hardiman's PCR petition, the post-conviction court found both that the PCR proceedings were barred by laches and that Hardiman failed to establish that he suffered ineffective assistance of trial counsel. Given our preference for deciding cases on the merits, we focus our review on the merits of Hardiman's ineffective-assistance claim.

[8] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## Ineffective Assistance of Counsel

[9] The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686). "The *Strickland* standard is

not limited to the trial or appellate phases in criminal proceedings, but also applies when defendants allege ineffective assistance during the guilty plea phase." *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019).

[10] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[11] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. A petitioner may show prejudice by demonstrating that there is "a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim

may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[12] Hardiman contends that his trial counsel provided ineffective assistance by failing to file a motion to suppress the evidence recovered during the execution of the search warrant. "A petitioner alleging ineffective assistance of counsel in overlooking a defense leading to a guilty plea must show a reasonable probability that, had the defense been raised, the petitioner would not have pleaded guilty and would have succeeded at trial." *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). Further, "'[t]o prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful.'" *Moore v. State*, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007) (quoting *Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002), *trans. denied*).

[13] We have previously concluded that while "[i]t is certainly the case that in some circumstances a claim of ineffective assistance of counsel can be established by showing a failure to suppress evidence," the petitioner bears the burden of proof at his post-conviction evidentiary hearing. *Helton*, 907 N.E.2d at 1024. As such, it is incumbent on the petitioner—not the State—to show that "there is a reasonable probability of insufficient evidence if a suppression motion had been granted." *Id.* at 1025. In *Helton*, the petitioner argued that without the seized contraband, the odds of a better result at trial "would have been much better than negligible" but presented "no evidence to establish [his] claim." *Id.* Upon review, we concluded that

> Perhaps if the evidence seized from Helton's home had been excluded, the chances of a better outcome would have been greater. But in the absence of any showing that the State's other evidence would have been insufficient, we are unable to evaluate the likelihood of acquittal or dismissal, and Helton has not shown a reasonable probability, or any probability at all, that he would have prevailed at trial.

*Id.*

[14] In arguing that his trial counsel provided ineffective assistance, Hardiman asserts

> Had trial counsel filed a motion to suppress, it would have been granted. If one removes the observations made during the officer's illegal entry from the search warrant affidavit, the remaining facts set out therein are woefully inadequate to establish probable cause to search the Petitioner's property. Under the circumstances, with the evidence ultimately suppressed, the Petitioner obviously (and reasonably) [would] have opted for proceeding with his plea of not guilty and would not have chosen to plead guilty. Trial counsel was, therefore, ineffective in not filing a motion to suppress and in allowing the Petitioner to plead guilty.

Appellant's Br. pp. 19–20. We cannot agree with Hardiman that the facts set forth in Officer Alley's affidavit in support of his request for a search warrant were "woefully inadequate to establish probable cause." Appellant's Br. p. 19.

[15] "To be valid, a warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law." *Gray v. State*, 758 N.E.2d 519, 521

(Ind. 2001). "In order to comply with these restrictions, the [judge's] task is simply to make a practical, commonsense decision whether, given all the circumstances set forth before him there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quote and ellipses omitted). "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Redden v. State*, 850 N.E.2d 451, 461 (Ind. Ct. App. 2006) (internal quotation omitted). "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." *Id.* "When seeking a search warrant, the police must follow the warrant statute, I.C. § 35–33–5–2,[2] which specifies the minimum information necessary to establish probable cause." *Id.* (internal quotation omitted). "As the reviewing court, our duty under the Fourth Amendment is to determine whether the [judge] issuing the warrant had a substantial basis for concluding that probable cause existed." *Gray*, 758 N.E.2d at 521 (internal quotation omitted). "While

---

2 Indiana Code section 35-33-5-2(a) provides that
  no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
    (1) particularly describing:
      (A) the house or place to be searched and the things to be searched for; or
      (B) particularly describing the person to be arrested;
    (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
      (A) the things sought are concealed there; or
      (B) the person to be arrested committed the offense; and
    (3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

significant deference is due to the [judge's] determination, our search for substantial basis must focus on whether reasonable inferences drawn from the totality of the evidence support the determination." *Id.* (internal quotation omitted).

[16]     Officer Alley requested a warrant to search Hardiman's property on February 2, 2003.  In support of his request, Officer Alley averred:

> 1.  That affiant is an officer with the Gibson County Sheriff Department.
>
> 2.  On January 31, 2003, this affiant and several officers went to the residence of Craig Hardiman, which is the third house east of Greer Fruit Market on the north side of SR 64 west with an unattached outbuilding approximately 30 to 40 feet northeast of the house.  The purpose of the contact was to investigate a report that [Hardiman] was to sell methamphetamine and a stolen handgun at 10:00 pm at this residence.  Officers went to the house and to the garage to locate [Hardiman] and observed a strong smell of ether, numerous punched starting fluid cans and stripped batteries in a burn pile, additional stripped batteries in front of the outbuilding, used coffee filters scattered between the house and the outbuilding in the yard area, and a large propane tank with greenish corrosion.
>
> 3.  On February 1, 2003, two other officers with the Gibson County Sheriff Department observed two males, one identified as [Hardiman], at this residence.  [Hardiman] was observed carrying what appeared to be a glass blender containing a substance similar to "pill dough," and coffee filters from the outbuilding to the residence.  The officers while observing the residence also observed a strong odor of ether.  These officers observed the individuals make three separate trips from the outbuilding to the house.

4. On February 2, 2003, this affiant observed a strong smell of ether coming from the residence. Another officer also drove by the residence within approximately fifteen minutes of this affiant's observation and also smelled a strong smell of ether.

5. Based on this affiant's training, experience and personal observations this affiant believes that there is evidence of manufacture/possession of methamphetamine, precursors, stolen weapons and paraphernalia within the above buildings and/or vehicles.

Appellant's App. Vol. II p. 27.

[17] In challenging the sufficiency of the affidavit to establish probable cause, Hardiman asserts that the burn pile and outbuilding were located in the curtilage surrounding his property and were not visible from the area where a visitor to his property would be expected to go. "The area immediately surrounding one's home is known as 'curtilage,' a term derived from Medieval Latin for court or yard." *Divello v. State*, 782 N.E.2d 433, 437 (Ind. Ct. App. 2003).

> When police enter onto private property in order to conduct an investigation or for another legitimate purpose and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the United States Constitution and the Fourth Amendment thereto. Accordingly, an individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places impliedly open to a visitor's entry. In general, this means that if police utilize normal

means of access to and egress from the house for some legitimate purpose, such as to make inquiries of the occupant, it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling. The implied invitation, however, extends only to those with legitimate business, and applies only to recognized access routes reasonable under the circumstances.

*Id.* (internal citations, quotations, and ellipses omitted).

In this case, even if we were to assume that Hardiman's description of the location of the burn pile and outbuilding as being located in the curtilage beyond the view from where a visitor is expected to go is accurate, we conclude that the affidavit is nonetheless sufficient to establish probable cause. The remaining portions of Officer Alley's affidavit indicate that on three consecutive days, multiple officers smelled the strong odor of ether, and Hardiman does not claim that any of them were in the curtilage at the time. We have previously noted that the strong smell of ether is a common sign of methamphetamine production. *See generally Holder v. State*, 847 N.E.2d 930, 933 n.1 (Ind. 2006) ("Ether is a chemical commonly known among law enforcement to be employed in the manufacture of methamphetamine."). On the second of the three days, Hardiman was observed entering and exiting the house carrying what appeared to be materials used in or produced during the manufacture of methamphetamine. Officers also observed a large propane tank with "greenish corrosion" and Hardiman makes no argument that the propane tank was located beyond an individual's view from an area where a visitor is expected to go. In addition, officers had received a report that Hardiman was going to sell

methamphetamine and a stolen handgun from the property on at a particular time on a particular date. We conclude that these factors are sufficient to establish probable cause to believe that Hardiman was engaged in the manufacture of methamphetamine. Thus, similar to *Helton*, we conclude that Hardiman has failed to carry his burden of establishing a reasonable probability that he would have succeeded at trial if a motion to suppress had been made and sustained.

[19] The judgment of the post-conviction court is affirmed.

Baker, J., and Pyle, J., concur.